1

2

3

4

5

6

7 **UNITED STATES DISTRICT COURT**

8 EASTERN DISTRICT OF CALIFORNIA

9

10 PATRICK L.  RICHARDSON,               1:99-cv-06575-OWW-GSA-PC

11              Plaintiff,               ORDER REQUIRING PLAINTIFF TO EITHER
                                         FILE THIRD AMENDED COMPLAINT OR
12      v.                               NOTIFY COURT OF WILLINGNESS TO
                                         PROCEED ONLY AGAINST DEFENDANT
13 H.  BRYANT, et.  al.,                 ORTIZ FOR DENIAL OF ACCESS TO THE
                                         COURTS
14
              Defendants.               ORDER FOR CLERK TO SEND PLAINTIFF A
15                                        CIVIL RIGHTS COMPLAINT FORM

16                                        THIRTY DAY DEADLINE

17 _____/

18      Patrick L. Richardson  ("plaintiff") is a state prisoner proceeding pro se and in forma

19 pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff commenced this action

20 on November 1, 1999.  The case now proceeds on the Second Amended Complaint which was

21 originally filed on December 13, 2004, and re-filed on July 3, 2007.  (Court Doc. 85.)

22 **I.      SCREENING REQUIREMENT**

23      The court is required to screen complaints brought by prisoners seeking relief against a

24 governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

25 court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

26 "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

27 monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

28 "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

1

1   dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a

2   claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

3        "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited

4   exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534

5   U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a).  Pursuant to Rule 8(a), a complaint must contain "a

6   short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R.

7   Civ. P. 8(a).  "Such a statement must simply give the defendant fair notice of what the plaintiff's

8   claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512.  A court may

9   dismiss a complaint only if it is clear that no relief could be granted under any set of facts that

10  could be proved consistent with the allegations. Id. at 514.  "'The issue is not whether a plaintiff

11  will ultimately prevail but whether the claimant is entitled to offer evidence to support the

12  claims.  Indeed it may appear on the face of the pleadings that a recovery is very remote and

13  unlikely but that is not the test.'" Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting

14  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171

15  (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . .

16  .'" (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001))).  However, "the liberal

17  pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490

18  U.S. 319, 330 n.9 (1989).  "[A] liberal interpretation of a civil rights complaint may not supply

19  essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin.,

20  122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir.

21  1982)).

22  **II.   SUMMARY OF SECOND AMENDED COMPLAINT**

23       The events alleged in the Second Amended Complaint occurred at Corcoran State Prison

24  beginning on July 14, 1999, while plaintiff was incarcerated there.  Plaintiff names Correctional

25  Officer ("C/O") H. Bryant, Sergeant B. Cooke, Lieutenant A. Walker, Captain D. Ortiz,

26  Counselor Joe Garcia, C/O A. Fujioka, C/O Luna, John Doe #1 (Chief Deputy Warden), John

27  Doe #2 (staff member), Jane Doe #1 (Captain) and Jane Doe #2 as defendants.  All defendants

28  are employees of the California Department of Corrections.  Plaintiff alleges he has exhausted his

administrative remedies.  Plaintiff alleges that on July 14, 1999, he was given a cassette tape by another inmate Lucas and told by Lucas to "check it out" and that it had some "old soul songs on it."  Plaintiff alleges that on July 15, 1999,  C/O Munoz and C/O H. Bryant conducted a cell search of plaintiff's cell and confiscated the cassette tape that was given to him by Lucas.  Plaintiff alleges that he later found out the cassette tape contained information about a prison gang, and that the tape was taken during an investigation of a conspiracy by inmates to assault C/O Bryant.  Plaintiff alleges  he did not know the contents of the tape when it was in his possession.  Plaintiff also alleges he is not a member of a prison gang and has not participated in serious misconduct at the prison.  Plaintiff alleges defendants wrongfully placed him in Ad-Seg for thirty five days without cause and without a proper hearing, for possession of a cassette tape containing prison gang information, in violation of his rights under the Eighth Amendment and the Due Process Clause.  Plaintiff also alleges that defendants denied him access to the courts when they ignored his requests for legal materials and access to the law library while he was detained in Ad-Seg, causing him to miss a court deadline, resulting in the dismissal of his pending habeas corpus petition.  Plaintiff also alleges that defendants violated his constitutional rights under the First and Fifth Amendments when they confiscated the cassette tape from his cell.  Plaintiff also alleges that defendants conspired under 42 U.S.C. § 1985(3) to violate his rights to Equal Protection and Due Process.  And finally, plaintiff alleges that defendants caused him to suffer mental and emotional distress when they wrongfully confined him in Ad-Seg and caused his petition for writ of habeas corpus to be dismissed.  Plaintiff requests as relief compensatory and punitive damages, injunctive relief, declaratory relief, and attorney fees, expenses and costs.

## III.    PLAINTIFF'S CLAIMS

### A.    <u>Legal Standard</u>

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "Section 1983 . . .  creates a cause of action for violations of the federal

Constitution and laws."  Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997)

(internal quotations omitted).  "To the extent that the violation of a state law amounts to the

deprivation of a state-created interest that reaches beyond that guaranteed by the federal

Constitution, Section 1983 offers no redress."  Id.

Section 1983 plainly requires that there be an actual connection or link between the

actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

Monell v.  Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

(1976).  "A person deprives another of a constitutional right, where that person 'does an

affirmative act, participates in another's affirmative acts, or omits to perform an act which [that

person] is legally required to do that causes the deprivation of which complaint is made.'"

Hydrick v. Hunter, No. 03-56712, 2007 WL 2445998, *5 (9th Cir. Aug. 30, 2007) (quoting

Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "[T]he 'requisite causal connection can be

established not only by some kind of direct, personal participation in the deprivation, but also be

setting in motion a series of acts by others which the actor knows or reasonably should know

would cause others to inflict the constitutional injury.'"  Id. (quoting Johnson at 743-44).

### B.   Conspiracy Under § 1985(3)

Plaintiff alleges that defendants were part of a conspiracy pursuant to 28 U.S.C. § 1985.

Section 1985 proscribes conspiracies to interfere with an individual's civil rights.  To state a

cause of action under section 1985(3), plaintiff must allege: (1) a conspiracy, (2) to deprive any

person or class of persons of the equal protection of the laws, (3) an act by one of the

conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or

deprivation of any right or privilege of a citizen of the United States.  Gillispie v. Civiletti, 629

F.2d 637, 641 (9th Cir. 1980); Giffin v. Breckenridge, 403 U.S. 88, 102-03 (1971).  Section 1985

applies only where there is a racial or other class-based discriminatory animus behind the

conspirators' actions.  Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992).

In interpreting these standards, the Ninth Circuit has held that a claim under § 1985 must

allege specific facts to support the allegation that defendants conspired together.  Karim-Panahi

1   v. Los Angeles Police Dept., 839 F.2d 621, 626 (9th Cir. 1988).  A mere allegation of conspiracy

2   without factual specificity is insufficient to state a claim under 42 U.S.C. § 1985.  Id.; Sanchez v.

3   City of Santa Anna, 936 F.2d 1027, 1039 (9th Cir. 1991).

4          Plaintiff alleges that "two or more of the defendants" conspired under 42 U.S.C. §

5   1985(3) "for the purpose of depriving plaintiff of equal protection of the law, depriving plaintiff

6   of due process of the law, and perpetuating the acts under the guise of an investigation thus

7   misusing their authority to perpetuate the conspiracy."[1]  However, plaintiff does not allege facts

8   to support the allegation that any of the defendants entered into a conspiracy.  Furthermore,

9   plaintiff does not identify which defendants he makes the allegations against.  As such, plaintiff's

10  complaint fails to state a claim for conspiracy for which relief can be granted under § 1985

11  against any of the defendants.

12         **C.     Due Process**

13         Plaintiff alleges that his Due Process rights were violated in conjunction with his

14  placement and retention in Ad-Seg.  The Due Process Clause of the Fourteenth Amendment

15  protects prisoners from being deprived of liberty without due process of law.  Wolff v.

16  McDonnell, 418 U.S. 539, 556 (1974).  In order to state a cause of action for deprivation of

17  procedural due process, a plaintiff must first establish the existence of a liberty interest for which

18  the protection is sought.  Liberty interests may arise from the Due Process Clause itself or from

19  state law.  Hewitt v. Helms, 459 U.S. 460, 466-68 (1983).  The Due Process Clause itself does

20  not confer on inmates a liberty interest in being confined in the general prison population instead

21  of administrative segregation.  See Hewitt, 459 U.S. at 466-68.  With respect to liberty interests

22  arising from state law, the existence of a liberty interest created by prison regulations is

23  determined by focusing on the nature of the deprivation.  Sandin v. Conner, 515 U.S. 472, 481-

24  84 (1995).  Liberty interests created by prison regulations are limited to freedom from restraint

25  which "imposes atypical and significant hardship on the inmate in relation to the ordinary

26  incidents of prison life."  Id. at 484.

27

28         _____

       [1]Second Amended Complaint, p. 17 of 23 (p. 14 of typewritten A.C.), lines 4-9.

1   Plaintiff has alleged no facts that demonstrate that he had a liberty interest in remaining

2   free from confinement in Ad-Seg. Id.; see also May v. Baldwin, 109 F.3d 557, 565 (9th Cir.

3   1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom

4   from state action taken within sentence imposed and administrative segregation falls within the

5   terms of confinement ordinarily contemplated by a sentence) (quotations omitted); Resnick v.

6   Hayes, 213 F.3d 443, 447 (9th Cir. 2000) (plaintiff's placement and retention in the SHU was

7   within range of confinement normally expected by inmates in relation to ordinary incidents of

8   prison life and, therefore, plaintiff had no protected liberty interest in being free from

9   confinement in the SHU) (quotations omitted).

10   Further, even if plaintiff had alleged facts sufficient to establish the existence of a liberty

11   interest in remaining free from Ad-Seg, plaintiff has not alleged facts sufficient to support his

12   claim he was deprived of the procedural due process protections he was due.  In matters of

13   internal security, courts have accorded great deference to the decisions of prison administrators.

14   A lesser quantum of process is due a state prisoner placed in segregation for administrative

15   reasons, Hewitt, 459 U.S. at 474, than is required to punish a prisoner for a disciplinary

16   infraction, Wolff, 418 U.S. 539.  An inmate must merely receive some notice of the charges

17   against him and an opportunity to present his views to the prison official charged with deciding

18   whether to transfer him to administrative segregation.  So long as this occurs, and the decision

19   maker reviews the charges and then-available evidence against the prisoner, the Due Process

20   Clause is satisfied.  Hewitt, 459 U.S. at 476; see also, Toussaint v. McCarthy, 801 F.2d 1080,

21   1101 (9th Cir.1986), cert. denied, 481 U.S. 1069 (1987).     Although plaintiff states he was not

22   given an opportunity to respond or submit information to defend himself, he alleges that on

23   August 12, 1999, he was escorted by two correctional officers to the 3A program office, where he

24   was questioned by Sergeant B. Cooke ("Cooke").  Plaintiff alleges Cooke told him that one of

25   the tapes taken from plaintiff's cell contained gang constitutions and ordinances of the Black

26   Guerilla Family ("BGF") prison gang, and that some of the persons spoken about in the tape were

27   planning to commit an act in the prison yard.  Plaintiff alleges Cooke acknowledged plaintiff's

28   non-affiliation with any gang and his lack of a significant disciplinary record.  Plaintiff alleges he

1   told Cooke that inmate Lucas was the source of the cassette tape, and Cooke said he already

2   knew.  Plaintiff was given a notification of lock-up on CDC Form 114-D, in which he was

3   notified he would be removed from the general population and placed in Ad-Seg because gang-

4   related material was found in his cell.  Plaintiff alleges that Lieutenant A. Walker signed the

5   lock-up order without attending the hearing or properly reviewing the facts.   Plaintiff alleges he

6   objected to being disciplined, and Cooke responded that plaintiff should have been locked up

7   twenty eight days ago.  Plaintiff alleges he was escorted to Ad-Seg and held there for thirty five

8   days for the offense of gang-related material found in his cell.  Based on plaintiff's allegations,

9   the court finds that plaintiff was given an opportunity to present his views to the prison official

10  charged with deciding whether to transfer him to Ad-Seg.

11       Plaintiff also alleges violations of his rights to due process by defendants at his first

12  hearing seven days after he was placed in Ad-Seg, when a decision was made that he should

13  remain in Ad-Seg pending further investigation.  Plaintiff alleges he should have been released

14  from Ad-Seg because there was no criminal activity or serious misconduct to investigate.

15  Plaintiff alleges that defendant Joe Garcia ("Garcia") was present at the hearing and misused his

16  authority by suggesting that plaintiff should remain in Ad-Seg, knowing there was nothing more

17  to investigate.  Plaintiff alleges that John Doe #1, a Chief Deputy Warden at CSP, was present at

18  the hearing and agreed with Garcia's suggestion that plaintiff should remain in Ad-Seg, without

19  knowing the facts.  Plaintiff alleges that defendants Correctional Captain Jane Doe #1 and

20  Correctional Staff Member John Doe #2, both members of the classification committee, stood by

21  and allowed their fellow staff members to make the erroneous decision to retain plaintiff in Ad-

22  Seg.

23       The court finds that plaintiff received all the notice he was due regarding his placement in

24  Ad-Seg, and all the process he was due regarding his retention in Ad-Seg.  Toussaint, 801 F.2d

25  1100-01.  Plaintiff is entitled to very limited due process protections under federal law with

26  respect to placement in Ad-Seg.  See Id.  Plaintiff was informed of the reasons for his placement

27  in Ad-Seg via the CDC Form 114-D; plaintiff was given an opportunity to submit information

28  when he was questioned by Cooke; Cooke reviewed the charges against him and the then-

1  available evidence and decided plaintiff would be placed in Ad-Seg; and plaintiff received a

2  follow-up hearing seven days after his placement.  That defendants may have failed to comply

3  with state regulations is not grounds for relief under section 1983 for deprivation of due process.

4  Therefore, plaintiff fails to state a claim for violation of his Fourteenth Amendment rights under

5  the Due Process Clause against any of the defendants.

6  **D.      Prison Appeals Process**

7  Plaintiff alleges that during the thirty five days he was confined in Ad-Seg, he filed

8  numerous 602 prison appeals opposing his placement in Ad-Seg, but none of the appeals were

9  granted until after he was out of Ad-Seg and filed the instant complaint.

10  There is no constitutional right to an inmate appeals process.  The Ninth Circuit has held

11  that prisoners do not have a "separate constitutional entitlement to a specific prison grievance

12  procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), *citing* Mann v. Adams, 855

13  F.2d 639, 640 (9th Cir. 1988).   The non-existence of, or the failure of prison officials to properly

14  implement an administrative appeals process within the prison system does not raise

15  constitutional concerns.  Mann, 855 F.2d at 640.  See also, Buckley v. Barlow, 997 F.2d 494, 495

16  (8th Cir.1993); Flick v. Alba, 932 F.2d 728 (8th Cir.1991); Azeez v. DeRobertis, 568F.Supp. 8,

17  10 (N.D.Ill.1982) ("[A prison] grievance procedure is a procedural right only, it does not confer

18  any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest

19  requiring the procedural protections envisioned by the fourteenth amendment").  A failure to

20  process a grievance does not state a constitutional violation.  Buckley, 997 F.2d at 495.  State

21  regulations give rise to a liberty interest protected by the Due Process Clause of the federal

22  constitution only if those regulations pertain to "freedom from restraint" that "imposes a typical

23  and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin,

24  515 U.S. at 484, 115 S.Ct. at 2300.  Accordingly, the allegations in the Second Amended

25  Complaint do not allege facts sufficient to give rise to a constitutional violation for the untimely

26  review of plaintiff's inmate appeals.

27  ///

28  ///

1       **E.**    **Access to Courts**

2       Inmates have a fundamental constitutional right of access to the courts. <u>Lewis v. Casey</u>,

3 518 U.S. 343, 346 (1996). The right of access is merely the right to bring to court a grievance the

4 inmate wishes to present, and is limited to direct criminal appeals, habeas petitions, and civil

5 rights actions. <u>Id</u>. at 354. The State is not required to enable the inmate to discover grievances

6 or to litigate effectively once in court. <u>Id</u>. Claims for denial of access to the courts may arise

7 from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking

8 access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking

9 claim). <u>Christopher v. Harbury</u>, 536 U.S. 403, 412-15, 122 S.Ct. 2179, 2185-87 (2002). In this

10 instance, plaintiff's access claim is backward-looking, as plaintiff claims that his pending habeas

11 corpus petition was dismissed as a result of defendants' inaction. To prevail on his claim,

12 plaintiff must show that he suffered an actual injury by being shut out of court. <u>Id</u>. at 415; <u>Lewis</u>,

13 518 U.S. at 351. A prisoner alleging a violation of his right of access to the courts must

14 demonstrate that he has suffered "actual injury." <u>Id</u>. at 349-50. The actual-injury requirement

15 mandates that an inmate "demonstrate that a nonfrivolous legal claim had been frustrated or was

16 being impeded." <u>Id</u>. at 353. The Court specifically rejected the notion that the state must enable

17 a prisoner to "litigate effectively once in court." <u>Id</u>. (quoting and disclaiming language contained

18 in <u>Bounds v. Smith</u>, 430 U.S. 817, 825-26 (1977)); <u>see also</u> <u>Cornett v. Donovan</u>, 51 F.3d 894,

19 898 (9th Cir. 1995) (determining that prisoners' right of access to the courts is limited to the

20 pleading stage of a civil rights action or petition for writ of habeas corpus).

21       Plaintiff alleges that while he was confined in Ad-Seg, he told Captain Ortiz that it was

22 crucial for plaintiff to have appropriate court access to litigate his pending petition for habeas

23 corpus at the court for the Northern District of California. Plaintiff alleges he told Ortiz he had a

24 thirty-day court deadline, and Ortiz acknowledged plaintiff's predicament and wrote the

25 information on a form. Plaintiff alleges that he also filed an emergency prison appeal regarding

26 his litigation pending in court, but the appeal was not granted before it was too late. Plaintiff

27 alleges that he also submitted a written request to defendant C/O Fujioka to be given access to

28 his legal property, and Fujioka told plaintiff to talk to Officer Luna, the law librarian. Plaintiff

1    alleges he submitted a request to Luna for access to the law library but received no response.

2    Plaintiff alleges that his requests were ignored by Ortiz, Fujioka, and Luna.  Plaintiff also alleges

3    that due to his confinement in Ad-Seg, he was unable to get the address for the Northern District

4    court until after the deadline had passed.  Plaintiff alleges that his habeas corpus petition was

5    dismissed because defendants caused him to miss the thirty-day deadline.

6        Plaintiff alleges facts showing that defendant Ortiz caused plaintiff's pending habeas

7    corpus petition to be dismissed by the court because Ortiz, knowing plaintiff had a court

8    deadline, failed to afford him the opportunity to meet the deadline while he was confined in Ad-

9    Seg.  Based on these allegations, construing plaintiff's complaint in the light most favorable to

10   plaintiff, the court finds that plaintiff states a cognizable claim for denial of access to the courts

11   upon which relief may be granted under section 1983 against defendant Ortiz.

12                    **F.    First Amendment Rights**

13       Plaintiff claims that confiscation of the cassette tape from his cell violated his First

14   Amendment rights of free speech.  [I]mprisonment does not automatically deprive a prisoner of

15   certain important constitutional protections, including those of the First Amendment.  Turner v.

16   Safley, 482 U.S. 78, 93, 107 S.Ct. 2254 (1987); see also O'Lone v. Estate of Shabazz, 482 U.S.

17   342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).  But at the same time the Constitution

18   sometimes permits greater restriction of such rights in a prison than it would allow elsewhere.

19   See  Turner, 482 U.S. at 84-85, 107 S.Ct. 2254.  As Overton (summarizing pre-Turner case law)

20   pointed out, "courts owe substantial deference to the professional judgment of prison

21   administrators."  Overton v. Bazzetta, 539 U.S.126, 132, 123 S.Ct. 2162 (2003).  And Turner

22   reconciled these principles by holding that restrictive prison regulations are permissible if they

23   are "reasonably related to legitimate penological interests," and are not an "exaggerated

24   response" to such objectives.  Turner, 482 U.S. at 87, 107 S.Ct. 2254.  Turner also sets forth four

25   factors "relevant in determining the reasonableness of the regulation at issue":  (1) whether the

26   regulation has a logical connection to the legitimate government interests invoked to justify it;

27   (2) whether there are alternative means of exercising the rights that remain open to the inmate;

28   (3) whether accommodation of the asserted constitutional right will have an impact on other

1    inmates, guards, and prison resources; and (4) whether there are ready alternatives that fully

2    accommodate the prisoner's rights at de minimis cost to valid penological interests. Id. at 89-90,

3    107 S.Ct. at 2261-62. See Beard v. Banks, 126 S.Ct. 2572, 2577 (2006).

4        Plaintiff alleges that on July 15, 1999, C/O Munoz and C/O H. Bryant entered plaintiff's

5    cell and initiated a cell search, confiscating a cassette tape.  Plaintiff alleges the cassette tape that

6    was confiscated merely spoke of gang constitutions and ideas, not a plotted conspiracy to commit

7    criminal activity or serious misconduct.  Plaintiff asserts that the tape was not his and he did not

8    know the contents of the tape when it was in his possession.

9        Plaintiff has not alleged facts showing that confiscation of the cassette tape by prison

10   officials was not "reasonably related to legitimate penological interests."  In fact, plaintiff alleges

11   in the Second Amended Complaint that prison officials were investigating a conspiracy by

12   inmates to assault a correctional officer when they searched plaintiff's cell.  Therefore, plaintiff

13   has not alleged facts sufficient to state a claim under section 1983 for violation of free speech

14   under the First Amendment.

15       **G.    Eighth Amendment Conditions of Confinement**

16       To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison

17   conditions must involve "the wanton and unnecessary infliction of pain . . . ." Rhodes v.

18   Chapman, 452 U.S. 337, 347 (1981).  Although prison conditions may be restrictive and harsh,

19   prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and

20   personal safety. Id.; Toussaint, 801 F.2d at 1107; Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th

21   Cir. 1982).  Where a prisoner alleges injuries stemming from unsafe conditions of confinement,

22   prison officials may be held liable only if they acted with "deliberate indifference to a substantial

23   risk of serious harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

24       The deliberate indifference standard involves an objective and a subjective prong.  First,

25   the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer v.

26   Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second,

27   the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . .

28   . ." Farmer, 511 U.S. at 837.  Thus, a prison official may be held liable under the Eighth

1  Amendment for denying humane conditions of confinement only if he knows that inmates face a

2  substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it.

3  Id. at 837-45.  Prison officials may avoid liability by presenting evidence that they lacked

4  knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to

5  the risk.  Id. at 844-45.  Mere negligence on the part of the prison official is not sufficient to

6  establish liability, but rather, the official's conduct must have been wanton.  Id. at 835; Frost, 152

7  F.3d at 1128.

8       "What is necessary to show sufficient harm for purposes of the Cruel and Unusual

9  Punishment Clause depends upon the claim at issue . . . ."  Hudson v. McMillian, 503 U.S. 1, 8

10  (1992).  "The objective component of an Eighth Amendment claim is . . . contextual and

11  responsive to contemporary standards of decency."  Id. at 8 (quotations and citations omitted).

12  "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-

13  confinement claim."  Id. at 9 (citation omitted).  With respect to this type of claim, "[b]ecause

14  routine discomfort is part of the penalty that criminal offenders pay for their offenses against

15  society, only those deprivations denying the minimal civilized measure of life's necessities are

16  sufficiently grave to form the basis of an Eighth Amendment violation."  Id. (quotations and

17  citations omitted).  "[E]xtreme deprivations are required to make out a conditions-of-

18  confinement claim."  Hudson, 503 U.S. at 9 (internal quotation marks and citations omitted).

19       Plaintiff has not alleged facts showing that his placement and retention in Ad-Seg, even if

20  improper, rise to the level of an Eighth Amendment violation.

21       **H.**     **Fifth Amendment**

22       Plaintiff alleges that defendants violated his rights under the Fifth Amendment when they

23  confiscated the cassette tape from his cell.  The Takings Clause of the Fifth Amendment "limits

24  the government's ability to confiscate property without paying for it," and "is designed to bar

25  Government from forcing some people alone to bear public burdens which, in all fairness and

26  justice, should be borne by the public as a whole."  Vance v. Barrett, 345 F.3d 1083, 1089 (9th

27  Cir. 2003) (internal quotations and citation omitted).

28  ///

1    The cassette tape was not confiscated by defendants for a public purpose, and plaintiff's

2    Takings claim fails as a matter of law.  See Kelo v. City of New London, Connecticut, 545 U.S.

3    469, 477-80, 125 S.Ct. 2655, 2661-663 (2005).

4        I.    **Mental and Emotional Distress**

5        Plaintiff alleges he suffered mental and emotional distress when defendants wrongfully

6    placed him in Ad-Seg for thirty five days.  Plaintiff alleges he was in such distress that he was

7    placed in the psych ward at the beginning of his Ad-Seg placement.   Under California law, the

8    elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct

9    by the defendant with the intention of causing, or reckless disregard of the probability of causing,

10   emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3)

11   actual and proximate causation of the emotional distress by defendant's outrageous conduct.

12   Sabow v. United States, 93 F.3d 1445, 1454 (9th Cir. 1996) (citing to Christensen v. Superior

13   Court, 54 Cal.3d 868 (1991)) (quotations omitted). "[T]he negligent causing of emotional

14   distress is not an independent tort, but the tort of negligence," Burgess v. Superior Court, 831

15   P.2d 1197, 1200 (Ct. App. 1992), and "contains the traditional elements of duty, breach of duty,

16   causation and damages."  Jacoves v. United Merchandising Corp., 9 Cal.App.4th 88, 106 (Ct.

17   App. 1992)

18       "A plaintiff must allege facts, not simply conclusions, that show that an individual was

19   personally involved in the deprivation of his civil rights."  Barren v. Harrington, 152 F.3d 1193,

20   1194 (9th Cir. 1998).  Plaintiff has not alleged any facts showing that any defendant's conduct

21   was extreme or outrageous, than any defendant acted with reckless disregard or intent to cause

22   plaintiff emotional distress, or that plaintiff's distress was severe or extreme.  Furthermore,

23   causing mental or emotional distress does not violate one's civil rights, and the Constitution does

24   not guarantee freedom from mental or emotional distress.

25       Based on the foregoing, the court finds that plaintiff has not stated a cognizable claim for

26   intentional infliction of emotional distress under section 1983 against any of the defendants.  To

27   the extent that plaintiff is attempting to pursue a separate claim for relief for the negligent

28   infliction of emotional distress, plaintiff may not do so.

1    **J.    Defendant Jane Doe #2**

2    Defendant names "two Jane Does" as defendants on page 3 of his form complaint.[2]

3    However, throughout the remainder of the Second Amended Complaint, plaintiff makes

4    allegations against only one Jane Doe ("Jane Doe #1"), a Correctional Captain who stood by at

5    plaintiff's retention hearing and allowed others to decide to retain plaintiff in Ad-Seg.  Nowhere

6    in the Second Amended Complaint does plaintiff refer to a second Jane Doe ("Jane Doe #2") or

7    make allegations against any other Jane Doe.  Therefore, plaintiff fails to state any claim against

8    defendant Jane Doe #2.

9    **K.    Addendum to Second Amended Complaint**

10   Attached to the Second Amended Complaint is an Addendum in which plaintiff includes

11   various allegations of actions taken against him by defendants.  Plaintiff is attempting to add

12   claims that defendants have retaliated against plaintiff for filing this action.

13   Plaintiff is cautioned that he may not add new and unrelated claims that arose after this

14   suit was filed.  Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be

15   brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by

16   a prisoner confined in any jail, prison, or other correctional facility until such administrative

17   remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion must occur *prior* to

18   filing suit.  McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  The section 1997e(a)

19   exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 435

20   U.S. 516, 532 (2002), and "[a]ll 'available' remedies must now be exhausted; those remedies

21   need not meet federal standards, nor must they be 'plain, speedy, and effective.'"  Porter, 534

22   U.S. at 524 (citing to Booth v. Churner, 532 U.S. 731, 739 n.5 (2001)).  Prisoners must complete

23   the prison's administrative process, regardless of the relief sought by the prisoner and regardless

24   of the relief offered by the process, as long as the administrative process can provide some sort of

25   relief on the complaint stated.  Booth, 532 U.S. at 741.

26   ///

27

28   [2]Second Amended Complaint , Court Doc. 85 at p. 3.

1    In a "conflict between Federal Rule of Civil Procedure 15 and the PLRA, the rule would

2    have to yield to the later-enacted statute to the extent of the conflict." Harris v. Garner, 216 F.3d

3    970, 982 (11th Cir. 2000). Rule 15 "does not and cannot overrule a substantive requirement or

4    restriction contained in a statute (especially a subsequently enacted one)." Id. at 983; see also

5    Cox v. Mayer, 332 F.3d 422, 428 (6th Cir. 2003) (citing Harris for this proposition with favor).

6    Allowing plaintiff to pursue the claims he added in his amended complaint would allow plaintiff

7    to thwart the mandate of section 1997e(a), which requires that claim exhaustion occur prior to

8    filing suit and not during the pendency of the suit. McKinney, 311 F.3d at 1199-1201.

9    Based on the foregoing, plaintiff may not pursue claims which accrued after the date

10   plaintiff commenced this action. Therefore, the court shall disregard those claims in plaintiff's

11   Addendum to the Second Amended Complaint which accrued after November 1, 1999.

12   **IV.    CONCLUSION**

13   The court finds that plaintiff's Second Amended Complaint states a cognizable claim for

14   relief under section 1983 against defendant Ortiz for denial of access to the courts, because it is

15   alleged Ortiz knew plaintiff had a court deadline and failed to afford him the opportunity to meet

16   the court deadline, resulting in the dismissal of plaintiff's pending habeas corpus petition.

17   However, plaintiff's Second Amended Complaint does not state a claim under section 1983

18   against any other defendant. In light of the fact that plaintiff has alleged legal claims not

19   previously screened by the court, the court is required to give notice and allow plaintiff to amend

20   the complaint one last time, if plaintiff wishes to do so. Plaintiff may not add any new claims in

21   the Third Amended Complaint, or the court will strike the complaint from the record.

22   If plaintiff does not wish to file an amended complaint and is agreeable to proceeding

23   only against defendant Ortiz for denial of access to the courts, plaintiff may so notify the court in

24   writing, and the court will issue a Findings and Recommendations recommending that all other

25   defendants and claims be dismissed from this action, and will forward plaintiff a summons and a

26   USM-285 form for completion and return. Upon receipt of the forms, the court will direct the

27   United States Marshal to initiate service of process on defendant Ortiz.

28   ///

In the event that plaintiff does wish to file a Third Amended Complaint, plaintiff is advised that an amended complaint supercedes the original complaint, <u>Forsyth v. Humana, Inc.</u>, 114 F.3d 1467, 1474 (9th Cir. 1997); <u>King v. Atiyeh</u>, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 15-220.  Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived."  <u>King</u>, 814 F.2d at 567 (citing to <u>London v. Coopers & Lybrand</u>, 644 F.2d 811, 814 (9th Cir. 1981)); <u>accord</u> <u>Forsyth</u>, 114 F.3d at 1474.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  <u>See</u> <u>Ellis v. Cassidy</u>, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is involved.  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  <u>Rizzo</u>, 423 U.S. 362; <u>May v. Enomoto</u>, 633 F.2d 164, 167 (9th Cir. 1980); <u>Johnson</u>, 588 F.2d at 743.

Plaintiff is reminded that he is not being given the opportunity to amend for the purpose of adding new defendants or claims relating to issues arising after November 1, 1999.  Plaintiff should take care to include only those claims that have been exhausted prior to the initiation of this suit.

Based on the foregoing, it is HEREBY ORDERED that:

1.      The Clerk's Office shall send plaintiff a civil rights complaint form;

2.      Within **thirty (30) days** from the date of service of this order, plaintiff must either:

        a.      File a Third Amended Complaint curing the deficiencies identified by the court in this order, or

        b.      Notify the court in writing that he does not wish to file a Third Amended Complaint and wishes to proceed only against defendant Ortiz for denial of access to the courts; and

///

3.      If plaintiff fails to comply with this order, this action will be dismissed for failure

to obey a court order.


IT IS SO ORDERED.

**Dated:**    **December 19, 2007**              **/s/ Gary S. Austin**
                                               UNITED STATES MAGISTRATE JUDGE