UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK L. RICHARDSON,<br><br>   Plaintiff,<br><br>   v.<br><br>H. L. BRYANT, et al.,<br><br>   Defendants.<br>_____/ | 1:99-cv-06575-OWW-GSA-PC<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT ORTIZ'S MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(Doc. 144.)<br><br>OBJECTIONS, IF ANY, DUE IN 30 DAYS |

**I.   RELEVANT PROCEDURAL HISTORY**

Plaintiff, Patrick Richardson ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the original complaint on November 1, 1999. (Doc. 1.) This action now proceeds on the Second Amended Complaint filed on July 3, 2007, against defendant Captain D. Ortiz ("Defendant") for denial of access to the courts.[1] (Doc. 85.) On January 28, 2010, Defendant filed a motion for summary judgment. (Docs. 144-150.) Plaintiff filed an opposition on May 3, 2010, and Defendant filed a reply on May 13, 2010. (Docs. 152, 153.)

Defendant's motion for summary judgment is now before the Court.

---

[1] All other claims and defendants have been dismissed from this action.

1

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Fed.R.Civ.P. 56(e); Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp., 475 U.S. 574, 586 n.11 (1986); First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289 (1968); Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed.R.Civ.P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that

might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

A verified complaint in a pro se civil rights action may constitute an opposing affidavit for purposes of the summary judgment rule, where the complaint is based on an inmate's personal knowledge of admissible evidence, and not merely on the inmate's belief. McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curium); Lew v. Kona Hosp., 754 F.2d 1420, 1423 (9th Cir. 1985); Fed.R.Civ.P. 56(e). Plaintiff's complaint is verified and will be considered by the Court in resolving Defendant's motion to the extent that it sets forth admissible facts. The parties bear the burden of supporting their motions and oppositions with the papers they wish the court to consider and/or by specifically referring to any other portions of the record they wish the court to consider. Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The Court will not undertake to mine the record for triable issues of fact. Id.

### III. PLAINTIFF'S ALLEGATIONS AGAINST DEFENDANT

Plaintiff is currently incarcerated at the California State Prison in Represa, California. The events at issue in this action allegedly occurred while Plaintiff was housed at Corcoran State Prison ("CSP") in Corcoran, California. Plaintiff is seeking money damages, declaratory relief, and injunctive relief based on allegations that he was denied access to the courts.

Plaintiff alleges in the Second Amended Complaint against Defendant as follows.[2] While Plaintiff was confined in Administrative Segregation ("Ad-Seg"), he told Defendant that it was crucial for Plaintiff to have appropriate court access to litigate his pending petition for habeas corpus at the United States District Court for the Northern District of California ("N.D. Court"). Plaintiff told Defendant he had a thirty-day court deadline, and Defendant acknowledged Plaintiff's predicament and wrote the information on a form. Plaintiff also filed an emergency

---

[2] For purposes of this motion for summary judgment, the summary herein concerns only Plaintiff's allegations and claims against defendant Ortiz, with explanatory background information.

3

prison appeal regarding his litigation pending in court, but the appeal was not granted before it was too late. Plaintiff's requests were ignored by Defendant. Due to Plaintiff's confinement in Ad-Seg, he was unable to get the address for the N.D. Court until after the deadline had passed. Plaintiff claims that his habeas corpus petition was dismissed because Defendant caused him to miss the thirty-day deadline.

## IV.   UNDISPUTED FACTS[3]

1. Plaintiff is a state prisoner in the custody of the California Department of Corrections and Rehabilitation.

2. Defendant was working as Facility Captain in Facility 3A at CSP at the time of the alleged events.

**Plaintiff's Petition for Writ of Habeas Corpus – First Dismissal:**

3. Plaintiff filed a petition for a federal writ of habeas corpus at the N.D. Court on September 24, 1997.

4. After several extensions of time, the N.D. Court extended the deadline until August 25, 1999 for Plaintiff to respond to the respondent's dispositive motion.

5. Plaintiff did not respond to the pending dispositive motion by the August 25, 1999 deadline.

6. On September 13, 1999, and September 27, 1999, Plaintiff filed notices of change of address with the N.D. Court.

7. On November 10, 1999, the N.D. Court dismissed Plaintiff's habeas petition, without prejudice to refiling after he had exhausted available state judicial remedies.

8. Between August 12, 1999 and September 16, 1999, the time covering Plaintiff's placement in Ad-Seg, and up until November 10, 1999 when the N.D. Court dismissed Plaintiff's

---

[3] These facts are undisputed for the sole purpose of this motion. Plaintiff has filed a separate statement of disputed facts and a declaration signed under penalty of perjury. (Doc. 152 at 37-43.). Local Rule 260(b). Also, Plaintiff's complaint is verified and shall be treated as an affidavit for purposes of the summary judgment rule where it is based on facts within Plaintiff's personal knowledge of admissible evidence, and not merely on Plaintiff's belief. Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998); McElyea, 833 F.2d at 197-98; Lew, 754 F.2d at 1423; Fed.R.Civ.P. 56(e).

4

habeas petition, Plaintiff did not seek or request additional time to respond to the dispositive motion.

9. Plaintiff appealed, and the Ninth Circuit reversed the decision and remanded the habeas petition for further proceedings.

**Plaintiff's Petition for Writ of Habeas Corpus – Second Dismissal:**

10. Plaintiff filed an amended petition for writ of habeas corpus.

11. On August 4, 2006, the N.D. Court denied Plaintiff's habeas petition and entered judgment on the grounds that his claim was time-barred and without merit. The N.D. Court held that Plaintiff's original petition filed September 24, 1997 was facially untimely because he filed the petition five months after the expiration of the one-year statute of limitations under the Antiterrorism and Effective Death Penalty Act ("AEDPA").

12. Plaintiff appealed this decision on September 13, 2006, but his certificate of appealability was denied on June 7, 2007 by the United States Court of Appeals.

**Plaintiff's 1999 Placement in Ad-Seg for Thirty-Five Days:**

13. Plaintiff was placed in Ad-Seg on August 12, 1999, pending an investigation.

14. On August 12, 1999, Plaintiff had thirteen days remaining on his extension of time related to his habeas filing.

15. Plaintiff remained in Ad-Seg for thirty-five days, until September 16, 1999.

16. Defendant approved Plaintiff's placement in Ad-Seg on August 13, 1999.

17. On September 2, 1999, while Plaintiff was in Ad-Seg, he filed an administrative inmate appeal concerning his alleged delayed access to the law library and requests for legal materials.

18. The appeal was partially granted on September 16, 1999.

19. In partially granting the appeal, the reviewer informed Plaintiff that a simple request slip would have gained him access to the law library.

20. If an inmate had a concern about a pending court deadline, he could complete a Request for Interview form. This form could be requested from a housing-unit officer, and

1  would then be submitted to correctional staff, who would take appropriate steps to confirm the
2  validity of the inmate's legal deadline.  To confirm the deadline's validity, a law librarian would
3  confirm whether the inmate was on the Preferred Legal User list that would give him priority
4  access to the library.  If the inmate was not on that list, the inmate could request to be placed on
5  the list by presenting a copy of the court's order to the law librarian.  The law librarian is
6  responsible for an inmate's placement on this user list.[4]

7       21.     If an inmate was concerned about a pending court deadline not being properly
8  addressed, he could contact a supervisor.  The supervisor would ask the inmate to document his
9  grievance, and the supervisor would forward the information to the law library.  If for some
10 reason, an inmate had already submitted a Request for Interview form and still had no response,
11 he could contact Ortiz and provide him with that information.  Ortiz would then either call in the
12 supervisor or submit the inmate's requested form directly to the law library.  Library staff would
13 then handle the inmate's request for access to the law library.

14      22.     After being placed in Ad-Seg on August 12, 1999, Plaintiff had his initial review
15 with the Institutional Classification Committee (ICC).  The Classification Committee considers
16 and determines the need to retain an inmate in segregated housing for the reasons set forth in the
17 segregation order.  Plaintiff received another review before the ICC on September 16, 1999.
18 There was no mention of any court deadline during the committee hearings.

19      23.     Plaintiff was released from Ad-Seg, following Defendant's recommendation on
20 September 16, 1999.

21 **Defendant's Responsibilities:**

22      24.     While at CSP, Defendant was responsible for the supervision of all custody staff
23 in Facility 3A, as well as the custody and classification of all inmates in that facility.
24 ///
25
26
27 [4] Plaintiff disputes whether a Request for Interview is the standard method to gain access to legal materials or the law library.  (Pl.'s Stmt. of Disputed Facts, Doc. 152 at 43 ¶11.)  However, Plaintiff does not dispute that a Request for Interview form is one method that can be used to gain access to the law library when an inmate has a
28 court deadline.

25. In 1999, there was one Ad-Seg unit in Facility 3A, and it held approximately 150 inmates.

26. Defendant had limited interaction with inmates in Ad-Seg because his job was to review information gathered by his staff to evaluate an inmate's initial placement in Ad-Seg. This is also known as the Administrative Review that would typically occur within twenty-four hours of their placement. Defendant would also routinely attend the ICC hearings during which an inmate would have the ability to present any grievance relating to his placement in Ad-Seg.

## V.   ANALYSIS

### A.   Section 1983 Actions

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law]. . . subjects, or causes to be subjected, any citizen of the United States. . . to the deprivation of any rights, privileges, or immunities secured by the Constitution. . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.  42 U.S.C. § 1983.

"Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

///

///

**B.** **Access to Courts Claim**

Plaintiff claims that Defendant caused Plaintiff's pending habeas corpus petition to be dismissed by the N.D. Court because Defendant, knowing Plaintiff had a court deadline, failed to afford him the opportunity to meet the deadline while he was confined in Ad-Seg.

**1.** **Legal Standard**

Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346, 116 S.Ct. 2174, 2177 (1996); Phillips v. Hust , 588 F.3d 652, 655 (9th Cir. 2009). The right of access to the courts is merely the right to bring to court a grievance the inmate wishes to present, and is limited to direct criminal appeals, habeas petitions, and civil rights actions. Lewis, 518 U.S. at 354.

Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 412-15, 122 S.Ct. 2179, 2185-87 (2002). In this instance, Plaintiff's access claim is backward-looking, as Plaintiff claims that his habeas corpus petition was dismissed as a result of Defendant's inaction. A prisoner alleging a violation of his right of access to the courts must demonstrate that he has suffered "actual injury." Lewis, 518 U.S. at 349-50. The actual-injury requirement mandates that an inmate "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." Id. at 353. To prevail on his claim, Plaintiff must show that he suffered an actual injury by being shut out of court. Harbury, 536 U.S. at 415; Lewis, 518 U.S. at 351; Phillips, 588 F.3d at 655.

The court specifically rejected the notion that the state must enable a prisoner to "litigate effectively once in court." Lewis, 518 U.S. at 354 (quoting and disclaiming language contained in Bounds v. Smith, 430 U.S. 817, 825-26 (1977)); see also Cornett v. Donovan, 51 F.3d 894, 898 (9th Cir.1995) (determining that prisoners' right of access to the courts is limited to the pleading stage of a civil rights action or petition for writ of habeas corpus).

///

## 2. **Defendant's Arguments**

Defendant argues that Plaintiff has not established that Defendant's action or inaction interfered with Plaintiff's access to the courts or caused an actual injury.

First, Defendant claims that he did not interfere with Plaintiff's habeas case. Plaintiff attributes the dismissal of his habeas petition to Defendant's alleged failure to afford him the opportunity to meet a court deadline while he was confined to Ad-Seg. (Pl.'s 2d. Am. Compl. at 9:25-28.) Defendant argues that Plaintiff cannot establish a denial of access to the courts because the November 10, 1999 dismissal was the result of Plaintiff's failure to exhaust state remedies, not the result of limited access to legal papers and the law library. (UF 7; Req. Jud. Not., Ex. B.)

Second, Defendant claims that Plaintiff had many ways, with or without Defendant's assistance, to access the law library and his legal materials. To access the law library, Plaintiff could have submitted a Request for Interview form to correctional staff, and then a law librarian would be responsible for confirming whether Plaintiff was on the Preferred Legal User list and could thus have priority access to the law library. (UF 20; Decl. Ortiz ¶5.) Plaintiff never requested or completed a Request for Interview form, nor informed Defendant of his specific requests for legal materials, or his exact court date, and if he had, Defendant would not have been the person to make the final decision. (Id.) Defendant argues that Plaintiff had the opportunity to file an inmate appeal but did not file one concerning access to the courts until after the court deadline had passed. (UF 17; Decl. Papan, Ex. F.) Plaintiff did not request an extension of time from the N.D. Court, but he did file two change-of-address notices. (UF 6, 8; Req. Jud. Not., Ex. D.)

Third, Defendant argues that Plaintiff cannot claim a First Amendment violation on the basis that Defendant failed to allow him to effectively litigate his case, because the First Amendment does not protect his ability to litigate effectively once his case is filed. Plaintiff was not prevented from filing his habeas petition with the N.D. Court. Rather, two years after he successfully filed it, the N.D. Court dismissed it because Plaintiff had failed to exhaust his state-

///

9

court remedies, which was unrelated to Defendant's supposed failure to afford Plaintiff the opportunity to oppose the motion to dismiss. (UF 11; Req. Jud. Not., Ex. B.)

Finally, Defendant argues that Plaintiff cannot establish that he suffered an actual injury caused by Defendant's conduct. There is no causal nexus between Defendant approving Plaintiff for a stay in Ad-Seg and the alleged denial of Plaintiff's right of access to court. The records indicate that the N.D. Court did not deny Plaintiff's petition because of a missed deadline. Rather, the N.D. Court denied Plaintiff's petition because he failed to exhaust his state-court remedies, a failure that could not have been cured by access to his legal papers. (UF 7; Req. Jud. Not., Ex B.) Plaintiff's original petition was facially untimely because he filed the petition five months after the expiration of the AEDPA's one-year statute of limitations. (UF 11; Req. Jud. Not., Ex. C at 5.)

The Court finds that Defendant has met his initial burden of informing the Court of the basis for his motion and identifying those portions of the record which he believes demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to Plaintiff. See Matsushita, 475 U.S. at 586. As stated above, in attempting to establish the existence of this factual dispute, Plaintiff may not rely upon the mere allegations or denials contained in his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank of Arizona, 391 U.S. at 289; Strong, 474 F.2d at 749.

### 3.     **Plaintiff's Opposition**

Turning to Plaintiff's position, the Court looks to Plaintiff's verified Second Amended Complaint and the declaration attached to his opposition. (Docs. 85, 152 at 37-41.) Plaintiff's opposition is not verified and therefore does not contain admissible evidence except for the attached declaration. Plaintiff argues that his habeas petition was denied as a result of Defendant's failure to allow him access to the law library and to his legal materials, preventing him from meeting his court deadline, exhausting his claims, or otherwise defending his case.

Plaintiff alleges that Defendant talked to him while he was in Ad-Seg. (Pl.'s 2d. Am. Cmpl. at 10 ¶58.)[5] Plaintiff alleges that he told Defendant he had a thirty-day court deadline and requested Defendant's assistance to obtain court access. (Id. at 10 ¶60.) Plaintiff recalls vividly that Defendant inquired whether Plaintiff "had any litigation in the Courts pending." (Plaintiff's Declaration ("Decl. Pl."), Doc. 152 at 38-39 ¶¶8, 9.) When Plaintiff replied, "Yes, I do," Defendant noted this on some piece of paper. (Id. at 39 ¶9.) Plaintiff then asked Defendant to assist him in this matter, to which Defendant responded with a head nod. (Id. at ¶10.) Plaintiff explained to Defendant, "I have a little more than a week left on my extension of time." (Id.) During his stay in Ad-Seg, Plaintiff also asked several staff members to assist him in obtaining his legal property, visiting the law library, or obtaining the address to the N.D. Court so he could contact the court and inform the court of his situation, but his requests were ignored. (Id. at ¶¶11, 12.) While he was in Ad-Seg, Plaintiff filed numerous appeals, including an emergency prison appeal regarding his pending litigation, which was not addressed until after he was out of Ad-Seg. (Id. at ¶11; Pl's 2d. Am. Cmpl. at 10-11, ¶¶62, 63.) Plaintiff also filed at least twenty Requests for Interviews to various staff members and directly to Defendant. (Decl. Pl. ¶13.) Plaintiff was never allowed to go to the law library during his thirty-five-day stay in Ad-Seg. (Id. at 40 ¶14.) Plaintiff did not receive his legal property until after he left Ad-Seg. (Id. at ¶17.) Defendant failed to assist Plaintiff. (Id. at ¶¶15, 16.) Plaintiff lacked all mobility beyond his prison cell while he was in Ad-Seg, resulting in the dismissal of his habeas corpus petition by the N.D. Court on November 10, 1999. (Id. at 9-10, ¶¶81, 83; Decl. Pl., Doc. 152 at 38 ¶4.).

### 4. Discussion

The parties agree that Plaintiff served a term in Ad-Seg between the dates of August 12, 1999 and September 16, 1999. (UF 8, 13, 15; Pl.'s 2d. Am. Compl. at 5: 25-27; Decl. Papan, Exs. E, K; Req. Jud. Not., Ex. B.) It is also undisputed that Defendant approved Plaintiff's term in Ad-Seg on August 13, 1999. (UF 16; Decl. Pl., Doc. 152 at 38 ¶7; Decl. Papan, Ex. E.) The

---

[5] When the pagination of the parties' documents differ from the pagination used by the Court's electronic case-filing system, the Court uses the pagination of the Court's electronic case-filing system.

parties also agree that while in Ad-Seg, Plaintiff missed a court deadline to defend his petition for writ of habeas corpus, and the habeas petition was dismissed. (UF 3-7; Pl's 2d. Am. Cmpl.; Req. Jud. Not., Exs. A, C, D.)

The parties dispute whether Defendant knew about Plaintiff's deadline. Plaintiff declares that he told Defendant about the thirty-day deadline, and that Defendant wrote down the information and then failed to act on it. (Decl. Pl., Doc. 152 at 38-40.) Defendant declares that he "only vaguely recall[s] Plaintiff" and has "no recollection of Plaintiff requesting access to legal materials or to the law library, or expressing any concern about a pending court deadline." (Decl. Ortiz at 3 ¶8.) However, even if Defendant knew about Plaintiff's deadline and ignored his request for assistance, Plaintiff still has not presented evidence that Defendant's inaction caused Plaintiff's petition to be dismissed, or that Plaintiff suffered an "actual injury."

Plaintiff has not shown that he had no way to request access to the law library, obtain his legal property, or meet his court deadline without Defendant's assistance. Plaintiff argues on one hand that he was completely immobilized while in Ad-Seg; on the other hand he claims he asked several staff members to assist him, filed numerous appeals, and filed at least twenty Requests for Interviews to various staff members and directly to Defendant while he was in Ad-Seg. (Pl's 2d. Am. Cmpl. at 10-11, ¶¶62, 63.; Decl. Pl., Doc. 152 at 38-39 ¶4, 11-13.) Plaintiff claims he asked staff members to help him obtain the address to the N.D. Court so he could contact the court and inform the court of his situation, but his requests were ignored. (Id. ¶¶11, 12.) . When Plaintiff's inmate appeal, filed September 2, 1999, was partially granted, Plaintiff was informed that a simple request slip would have gained him access to the law library. (UF 19; Decl. Papan, Ex. E.) Assuming it is true that prison staff refused to assist him, evidence shows that Plaintiff filed a notice of change of address at the N.D. Court on September 13, 1999, during the time he was confined in Ad-Seg. (UF 6; Req. Jud. Not., Ex. D at 10.) Plaintiff also filed a second notice of change of address at the N.D. Court on September 27, 1999, between the date he was released from Ad-Seg and the date his habeas petition was dismissed. (Id.) Plaintiff has not explained why, if he had the ability to file notices of change of address at the N.D. Court, even

while in Ad-Seg, he did not file a request for extension of time to meet his deadline. The Court concludes that Plaintiff has not shown he had no means to achieve his objective without Defendant's assistance.

Even if Defendant caused Plaintiff to miss his deadline, Plaintiff has not shown that the missed deadline was the cause of the dismissal of his habeas petition, or that he was deprived of a constitutional right. After Plaintiff's petition was dismissed on November 10, 1999, Plaintiff appealed the decision and the petition was reinstated. In the end, Plaintiff's petition was reviewed on the merits and denied on August 4, 2006, as unmeritorious and for being filed untimely under the AEDPA, reasons that could not have been affected by any inaction by Defendant while Plaintiff was serving time in Ad-Seg. Even if Plaintiff's allegations against Defendant were true, Plaintiff was able to proceed with his habeas petition, resulting in the review and disposition of his petition on the merits by the N.D. Court. Therefore, Plaintiff has not shown that he was shut out of court, suffered "actual injury," or that he lost a meritorious suit which cannot now be tried.

Based on the foregoing, the Court finds that Plaintiff has not shown that Defendant's acts or omissions caused his petition for habeas corpus to be dismissed, or that he was deprived of a constitutional right. Therefore, Plaintiff has not established the essential elements of his case, or established the existence of triable issues of material fact as to his access to court claim against Defendant.

### b. Qualified Immunity

Defendant argues that he is entitled to qualified immunity. Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 129 S.Ct. 808, 815 (2009), and protects "all but the

plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096 (1986).

In resolving a claim of qualified immunity, courts must determine whether, taken in the light most favorable to the plaintiff, the defendant's conduct violated a constitutional right, and if so, whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001); McSherry v. City of Long Beach, 560 F.3d 1125, 1129-30 (9th Cir. 2009). While often beneficial to address in that order, courts have discretion to address the two-step inquiry in the order they deem most suitable under the circumstances. Pearson, 129 S.Ct. at 818 (overruling holding in Saucier that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); McSherry, 560 F.3d at 1130.

As discussed above, the Court finds that Defendant did not violate Plaintiff's constitutional rights. Therefore, the issue of qualified immunity shall not be considered.

## VI.    CONCLUSION AND RECOMMENDATION

The Court concludes that Defendant is entitled to judgment as a matter of law because Plaintiff has not established the existence of triable issues of material fact as to his First Amendment access to courts claim against Defendant. Accordingly, the Court RECOMMENDS that Defendant Ortiz's motion for summary judgment, filed on January 28, 2010, be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to

///
///
///
///
///

1  Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file
2  objections within the specified time may waive the right to appeal the district court's order.
3  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

5      IT IS SO ORDERED.
6      Dated:   **July 16, 2010**           /s/ **Gary S. Austin**
                                            UNITED STATES MAGISTRATE JUDGE